1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT FOR THE

8                          EASTERN DISTRICT OF CALIFORNIA

9
BECKY CONTRERAS,                    )        1:10cv01028 DLB
10                                  )
                                    )
11                                  )
                                    )        ORDER REGARDING PLAINTIFF'S
12            Plaintiff,            )        SOCIAL SECURITY COMPLAINT
                                    )
13       vs.                        )        (Document 22)
                                    )
14   MICHAEL J. ASTRUE,             )
     Commissioner of Social         )
15   Security,                      )
                                    )
16                                  )
              Defendant.           )
17   _____)

18                              **BACKGROUND**

19          Plaintiff Becky Contreras ("Plaintiff"), as guardian ad litem on behalf of her minor son, M.

20   S., seeks judicial review of a final decision of the Commissioner of Social Security

21   ("Commissioner") denying childhood Supplemental Security Income ("SSI") pursuant to Title XVI

22   of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

23   were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate

24   Judge.

25
26
27
28                                         1

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed an application for SSI on behalf of her son, M. S. ("Claimant"), on December 18, 2007.  AR 77.  She alleged that Claimant was disabled since his birth on October 25, 2007, due to a cleft lip and palate.  AR 77, 87-94.  After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 51, 53-57, 60.  ALJ William C. Thompson, Jr., held a hearing on September 15, 2009, and issued a decision denying benefits on December 21, 2009.  AR 11-26, 27-49.  The Appeals Council denied review on April 2, 2010.  AR 1-3.

Hearing Testimony

ALJ Thompson held a hearing on September 15, 2009, in Stockton, California.  Plaintiff appeared with her non-attorney representative, Charles Polson.  Witness Rebecca Castile also appeared.  AR 29.

Plaintiff testified that Claimant, who was born in October 2007, is different from other children.  As a two-year-old, he does not climb or talk, and he cannot interact with other children.  He basically sits and looks, relying mostly on Plaintiff to communicate.  AR 31.

Claimant was born with a cleft lip and palate.  He has had two corrective surgeries, including one in November 2008.  The lip and palate are partially repaired, but Claimant will need another surgery at age five.  At that time, they will take bone from his hip to fix the palate.  AR 32.

Plaintiff reported that everything Claimant eats is puréed.  He uses a special bottle, which looks like a syringe.  Claimant sometimes chokes and gags when he eats. AR 32-33.  Plaintiff prepares all of his food, boiling it and putting it in a blender.  She feeds him about five times throughout the day.  AR 33.

Plaintiff testified that Claimant is not attempting to talk.  He makes "blurring sounds," and a speech therapist is working with him one day per week.  AR 33-34.  Claimant can crawl.  He also walks, but it is a stumbling walk and he cannot turn.  He plays with a stuffed animal, but basically

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    holds it in his arm.  He doesn't try to communicate with it or talk to it.  AR 34-35.

2         Plaintiff explained that she takes Claimant to the Lucile Packard Children's Hospital at

3    Stanford ("Stanford").  He attends about six times a month for genetics, neurology, speech therapy,

4    and vision appointments.  Plaintiff receives help from the Early Start program, which is hands on

5    with Claimant.  Early Start also gave Plaintiff a referral to Kaleidoscope, which provides Claimant's

6    speech therapy.  AR 35-36.  Claimant sees "Dr. Saday" at Stanford up to three times a month.  AR

7    36-37.

8         Plaintiff does not work because she has to be with Claimant.  He sees specialists three times a

9    week.  AR 37-38.

10        In response to questions from her representative, Plaintiff testified that Claimant has a seizure

11   disorder.  During a seizure, his eyes roll back, he starts to tremble, shake and drool and he wets his

12   pants.  After a seizure, it takes about 20 or 30 minutes before he becomes alert.  He has these

13   seizures every other day.  AR 38-39.

14        Plaintiff testified that Claimant crawls and can walk about six feet.  He does not understand

15   doors and runs into walls.  He doesn't understand about going around objects.  He runs into objects

16   and falls down.  AR 39.

17        Plaintiff reported that Claimant drools continuously every day.  He doesn't understand when

18   Plaintiff is conversing with him, and he does not understand his name.  He doesn't understand about

19   objects and how things go together.  He does not play games.  He cries every day from the morning

20   to midday, but a bath will calm him down.  He does not engage in constructive play or pretend

21   games.  AR 39-41.

22        Claimant likes the color red, but does not have any interests.  He does not participate in

23   putting on his clothes.  He cannot control his continence issues.  He cries a lot and if Plaintiff can get

24   a smile it is a "good day."  He does not smile every day.  He does not play with other children.  He is

25   learning how to control his arm and leg movements, but his hands go everywhere.  If he falls down,

26   he cries for Plaintiff to pick him up.  He tries to reach out and grab things, but he reaches in a

27   different direction.  AR 41-43.

28
                                                        3

Plaintiff reported that Claimant gets along with Plaintiff's mom, but cries with others.  He also forgets Plaintiff's mom, even though she comes to the house all the time.  AR 43.

In response to additional questions from the ALJ, Plaintiff testified that Claimant is having more tests run at Stanford for his seizure-like episodes.  He does not have any prescription medication for seizures.  Plaintiff clarified that Claimant's seizure episodes last for a minute or two.  He is very disoriented when he comes out of a seizure.  AR 44.

Lay witness Rebecca Castile, Claimant's great aunt, also testified.  AR 45.  She sees Claimant every day and has observed him having seizures.  He has at least three seizures a week.  AR 46.  Ms. Castile reported that Claimant is not able to dress himself.  He does not understand conversations.  He does not play games.  He does not have any particular interests and does not play with any particular books, toys or blocks.  He does not interact with her.  He cannot be left alone.  AR 46-47.

Medical Record

Claimant underwent a newborn examination on October 26, 2007.  He was diagnosed with a left-sided cleft lip and palate.  AR 126.

On October 31, 2007, Claimant received emergency room treatment for complaints of oral ulcers and poor feeding.  AR 135-37.

On December 29, 2007, Claimant was seen in the emergency for complaints of a fever.  On examination, Claimant was happy, smiling, playful and alert.  AR 227.

On January 14, 2008, Dr. David Kahn from Stanford summarized his evaluation of Claimant's left unilateral cleft lip and palate.  On examination, Claimant was an easily consolable child in no distress.  Examination findings were consistent with a left unilateral cleft lip and palate.  There was asymmetry to the face and some underdevelopment of the helical rim of the ears.  Claimant's family was provided with new bottles for feeding.  Dr. Kahn recommended an increased caloric intake and an occupational therapy consultation for feeding.  Surgery was planned pending further weight gain.  AR 152-53.

On January 28, 2008, Dr. Roger Fast, a state agency medical consultant, completed a

4

1   Childhood Disability Evaluation Form.  Dr. Fast opined that Plaintiff had no limitations in acquiring

2   and using information, in attending and completing tasks, in interacting and relating with others, in

3   moving about and manipulating objects, or caring for himself.  Claimant had a less than marked

4   limitation in the health and physical well-being domain.  Dr. Fast found that Claimant, who was

5   almost three months old, had been diagnosed with a cleft palate, but was feeding and gaining weight.

6   AR 146-50.

7          On February 26, 2008, Claimant underwent a left cleft lip repair.  AR 156, 169-70.  Dr. Kahn

8   saw Claimant for a follow-up visit on March 10, 2008.  Plaintiff reported that Claimant had been

9   extremely fussy and the nasal stents were always blocked.  On examination, Claimant was fussy, but

10  consolable.  His nasal stents were cleaned out.  He was prescribed antibiotics for upper respiratory

11  infection symptoms. AR 163.  Dr. Kahn again saw Claimant on March 31, 2008.  Claimant was

12  doing well and his nasal stents were removed.  Dr. Kahn indicated that Claimant was to be scheduled

13  for palate repair in coordination with pressure equalization tubes.  AR 162.

14         On April 5, 2008, Claimant was taken to the emergency room due to a sore throat and not

15  eating.  Claimant left before being seen.  AR 222-23.

16         On May 5, 2008, Claimant was diagnosed with an upper respiratory infection.  AR 181.

17         On June 26, 2008, the Stanislaus County Special Education Local Plan Area prepared an

18  initial Individual Family Service Plan ("IFSP").  Claimant qualified for Early Start and education

19  services due to a global developmental delay.  The IFSP team reviewed Claimant's present levels of

20  development.  At 8 months of age, his social, receptive and expressive communication and his gross

21  motor developmental levels were rated at 5 months.  His adaptive self-help level was rated at 3

22  months.  His fine motor and cognitive developmental levels were rated at 4-5 months.  AR 288.

23  Among other identified services, Claimant was to receive a 1:1 comprehensive program provided by

24  Kaleidoscope for twelve hours per month.  AR 284-292.  An Early Start evaluation attached to the

25  IFSP recommended therapy for Claimant's gross motor skills 5x/month.  AR 293.

26         On July 8, 2008, Dr. J. Glaser, a state agency medical consultant, completed a Childhood

27  Disability Evaluation Form.  Dr. Glaser opined that Claimant had less than marked limitations in the

28
                                        5

1   health and physical well-being domain.  Claimant had no other domain limitations.  AR 187-92.

2          On July 29, 2008, Bonnie Munson of Kaleidoscope Therapeutics prepared a Home Visit

3   Record & Activity Sheet.  Ms. Munson noted that Claimant loved peek-a-boo and closed his eyes to

4   "hide."  Claimant transferred toys from hand to hand.  AR 229.

5          On August 20, 2008, Claimant was diagnosed with an upper respiratory infection and

6   eczema. On physical examination, Claimant was playful.  AR 282.

7          On September 13, 2008, Roxane Bausch, M.S., prepared a Pediatric Feeding/Oral-Motor

8   Evaluation report.  Ms. Baush opined that Claimant had a moderate to moderate severe oral

9   motor/feeding disorder secondary to his cleft palate.  His hypersensitivity and decreased coordination

10  had an impact on his ability to tolerate age appropriate foods.  Ms. Baush recommended oral

11  motor/feeding therapy once per month until surgery was completed.  AR 309-311.

12         On October 15, 2008, speech therapist Amy Meyer, M.A., C.C.C.- S.L.P., evaluated

13  Claimant at Stanford.  Based on information primarily obtained from his mother, Claimant primarily

14  used vowel-like vocalizations, was able to produce the /m, n/ phonemes and reduplicated babbling.

15  Claimant reportedly had two intentional words, e.g., "mama" and "no."  AR 257, 266.

16         On the same date, Claimant was seen by a Stanford genetic counselor, Dr. Neda Zadeh.

17  Plaintiff reported that Claimant was able to sit unassisted at 8 months and started crawling at 10

18  months.  He was unable to pull to stand.  Dr. Zadeh recommended fragile X testing and comparative

19  genomic hybridization due to Claimant's history of mild gross motor delay and mildly dysmorphic

20  features.  AR 261-63.

21         On October 28, 2008, Claimant underwent cleft palate repair.  He also underwent bilateral

22  placement of pressure equalization tubes due to chronic serous otitis media.  AR 242-46.

23         On October 30, 2008, Claimant was seen in the emergency room for a reported seizure.

24  Following examination, there was no outstanding emergency medical condition.  A chest x-ray

25  suggested bronchiolitis.  A head CT scan was unremarkable.  Claimant was given a morphine IV for

26  a possible seizure disorder.  AR 202-10, 212-13.

27         On November 12, 2008, Dr. Kahn saw Claimant for a follow-up visit.  He noted that this was

28                                                         6

1   the first time that Claimant's mother mentioned questionable seizure activity.  On examination,

2   Claimant's mouth had a foul smell and there was a lot of food within the mouth and in the alveolar

3   cleft.  Claimant was healing well, but it was difficult to tell if the palate was completely intact.  Dr.

4   Kahn discussed better oral hygiene.  AR 240.

5           On December 4, 2008, Claimant's genetic testing results were abnormal with a deletion at

6   chromosome 8q21.11 to 8q21.12.  The clinical significance was unknown.  AR 271-72.  Dr. Zadeh

7   spoke to Claimant's mother regarding the results.  Claimant's mother reported that Claimant's

8   pediatrician suspected seizures.  AR 264.

9           On January 14, 2009, Claimant was diagnosed with an upper respiratory infection.  AR 281.

10          On February 10, 2009, Bonnie Munson prepared a Kaleidoscope Early Start Comprehensive

11  Program Progress/Assessment Report.  At the outset of the report, Ms. Munson stated that she

12  provided infant development services for Claimant in the Summer and Fall of 2008, but had not seen

13  him since October.  Claimant's mother reportedly was without a stable home and was shuttling

14  between family members.  Ms. Munson visited Claimant on February 2, 2009, and based her report

15  on the visit.  At 15 months of age, Claimant's social skills were at a developmental age of 12-15

16  months.  His communication skills were at a developmental age of approximately 12 months.  His

17  adaptive/self-help skills were at approximately 10 months and his gross motor skills were at 10-11

18  months.  Claimant was noted to be crawling very well on all fours, pulling to stand and cruising

19  along furniture.  His fine motor and cognitive skills were at a developmental age of approximately 12

20  months.  Claimant played appropriately with toys.  Ms. Munson recommended continued services,

21  including infant development services 2-4 times per month, speech therapy 2-4 times per month and

22  physical therapy if walking was delayed by more than three more months.  AR 299-301.

23          On March 3, 2009, Dr. Zadeh conducted genetic counseling at the Stanford Genetics Clinic.

24  Although Claimant's mother reported possible seizure activity, Claimant had never been evaluated

25  by neurology and was not taking any antiepileptic medications.  Dr. Zadeh reported that lab studies

26  showed a deletion of chromosomes, which was at least 2.7 megabases in size and included only 3

27  genes of known function.  As to his development, Claimant's mother reported that he had begun to

28                                                              7

sit unassisted at 15 months, but was not pulling to stand or crawling.  He did not have any words, but had intonations.  During a limited physical examination by Dr. Zadeh, Claimant was happy, interactive, smiling and playful.  His height was at the 5th percentile, his weight under the 3rd percentile and his head circumference was at the 3rd percentile.  Dr. Zadeh explained that the clinical significance of the particular deletion of chromosome 8 was not certain, but if the deletion represented a new genetic change in him, then it would be more likely to be associated with Claimant's developmental delay and cleft lip.  Dr. Zadeh recommended DNA testing for Fragile X syndrome.  Claimant was referred to Behavior and Development at Stanford, and appointments were made with neurology and ophthalmology.  It was recommended that Claimant's height, weight and head circumference be closely monitored and earlier follow-up recommended if there was continued evidence of decelerated growth.   AR 232-36, 237-39.

On June 1, 2009, Bonnie Munson prepared a Kaleidoscope Early Start Comprehensive Program Progress/Assessment Report.  Ms. Munson reported that Kaleidoscope had attempted to provide infant development services, speech therapy and occupational therapy, but only some of the infant development services were able to be provided because of difficulties with cancellations and lack of returned calls.  Ms. Munson used the Hawaii Early Learning Profile to obtain an estimate of Claimant's developmental skills.  His abilities were observed over several visits in April and May.  At 19 months of age, Ms. Munson opined that Claimant's social skills were at a developmental age of 18 months.  His communication skills were at an expressive age of 15 months and a receptive age of 15-18 months.  Claimant jabbered with inflection and had about 10 understandable words.  He followed familiar verbal directions.  Ms. Munson had some concerns regarding Claimant's adaptive/self-help skills, which were at a developmental age of 12-15 months.  Claimant reportedly did not always sleep through the night, waking up agitated and crying for hours.  Claimant finger fed himself and was beginning to use a spoon.  He drank from a sipper cup and could hold it by its handle.  He could remove his own socks and hat.  Ms. Munson evaluated Claimant's gross motor skills at a development age of 15-18 months.  He walked independently and would occasionally run a few steps.  Claimant's fine motor skills were at a developmental age of 16-18 months.  He could

8

1   stack 3 blocks, point with his index finger, and scribble with crayons.  His cognitive skills were at a

2   developmental age of 18-20 months.  He enjoyed books, could find hidden toys, and could nest 3

3   cups.  Ms. Munson reported that the multi disciplinary team offered by Kaleidoscope would not be

4   continuing services because the intensity of service appeared to be more than the family needed or

5   wanted.  AR 295-98.

6        On August 27, 2009, Dr. Zadeh completed a Child Disability Questionnaire for Doctor form

7   based on an evaluation of Claimant at 16 months of age.  Dr. Zadeh opined that Claimant had a mild-

8   moderate limitation in acquiring and using information.  He did not speak any words and had a

9   global developmental delay.  Dr. Zadeh was unable to assess Claimant's limitations in the areas of

10  attending and completing tasks or interacting and relating with others.  At the last evaluation,

11  Claimant was babbling, but did not have any actual words, which was delayed for his age.  Dr. Zadeh

12  did not identify the degree of limitation in Claimant's moving about and manipulating objects.  She

13  reported that he was not crawling, pulling to stand or walking.   In the health and physical well-being

14  domain, Dr. Zadeh stated that Claimant required both physical and speech therapy secondary to

15  global delay.  Dr. Zadeh identified clinical findings of cleft lip and palate repair, seizure activity,

16  dysmorphic features, global developmental delay and chromosome abnormality.  Claimant's long

17  term prognosis was unknown.  AR 312-13.

18       On December 18, 2009, Dr. Steven Ehrreich evaluated Claimant in the Neurology Clinic at

19  Children's Hospital Central California.  Claimant was 2 years, 1 month old at the time of evaluation.

20  Dr. Ehrreich indicated that Claimant was developmentally a bit delayed, walking by 1 year 7 months,

21  jabbering, and saying several words, but not putting words together.  After Claimant's second

22  surgery for his palate, he had an event that began with eyes deviating to the right and then right-sided

23  jerking.  The first event lasted about 3-4 minutes and he continued to have similar events of shorter

24  duration lasting about 30 seconds about 3 times per month.  Neither an EEG or imaging studies had

25  been done.  On neurologic evaluation, Claimant was alert and had interest in presented objects.  He

26  jabbered almost continuously and seemed pleasant and happy throughout the clinic visit.  A motor

27  exam revealed mildly decreased tone throughout with adequate strength.  Dr. Ehhreich opined that

28

1  the description of the seizures showed they were "clearly complex partial with secondary

2  generalization, presumably, in the left hemisphere."  Claimant was to start on Trileptal.  Dr. Ehrreich

3  hoped the medication would control Claimant.  A MRI under sedation and an EEG were to be

4  completed at the next convenient time.  AR 315-17.

5                               **SCOPE OF REVIEW**

6         Congress has provided a limited scope of judicial review of the Commissioner's decision to

7  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the

8  Court must determine whether the decision of the Commissioner is supported by substantial

9  evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson*

10  *v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514

11  F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might

12  accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole

13  must be considered, weighing both the evidence that supports and the evidence that detracts from the

14  Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

15  evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*,

16  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the

17  Commissioner's determination that the claimant is not disabled if the Commissioner applied the

18  proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

19  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

20                                 **REVIEW**

21         A child, defined as "[a]n individual under the age of 18," is disabled for purposes of SSI if

22  the child "has a medically determinable physical or mental impairment, which results in marked and

23  severe functional limitations, and which can be expected to result in death or which has lasted or can

24  be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

25  1382c(a)(3)(C)(i).  To determine if a child is disabled for purposes of SSI, an ALJ should apply the

26  three-step sequential evaluation process established under Title 20 of the Code of Federal

27  Regulations, § 416.924.  The three-step evaluation process requires the ALJ to determine (1) whether

28

the claimant is currently engaged in substantial gainful activity, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, and (3) whether the claimant's impairment or combination of impairments meets or medically equals the requirements of a listed impairment, or functionally equals the listings. 20 C.F.R. § 416.924(b)-(d).

Applying the three-step evaluation process in this case, the ALJ found that Claimant had not engaged in substantial gainful activity since November 26, 2007.  Claimant had the severe impairment of left unilateral cleft lip and palate, status post surgical repair.  Despite this impairment, Claimant did not meet or medically equal a listed impairment and did not functionally equal the listings.  Claimant had no limitation in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating with others, no limitation in moving about and manipulating objects, and no limitation in the ability to care for himself.  Claimant had less than marked limitation in health and physical well-being.  Therefore, the ALJ concluded that Claimant had not been disabled since November 26, 2007.  AR 17-25.

Plaintiff now contends that the ALJ erred by (1) rejecting the opinion of Claimant's treating physician, Dr. Zadeh; (2) failing to develop the record; and (3) failing to credit the third party statements of Claimant's mother and aunt.

## DISCUSSION

### A.      Opinion of Treating Physician

Plaintiff contends that the ALJ failed to credit the opinion of Claimant's treating physician, Dr. Zadeh.  In general, a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir.1989).  Where, as here, a treating physician's opinion is controverted by the opinions of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

1    Plaintiff claims error because the ALJ rejected Dr. Zadeh's opinion in favor of the non-
2    examining state agency physicians, Drs. Fast and Glaser.  The opinion of a non-examining physician
3    cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an
4    examining or treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990) *Gallant v.*
5    *Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  In this instance, the ALJ assigned "great weight" to
6    the opinions of Drs. Fast and Glaser, indicating that their opinions were consistent with the record
7    and the longitudinal evidence.  AR 19.  However, Drs. Fast and Glaser rendered their opinions in
8    January and July 2008, well before Claimant was diagnosed with a moderate to moderate severe oral
9    motor/feeding disorder, gross motor delay, chromosomal deletion, global developmental delay and
10   seizure activity.  AR 232-39, 261-63, 271-72 , 309-13, 315-17.  Accordingly, the ALJ erred in
11   rejecting Dr. Zadeh's opinion in favor of the non-examining physicians' opinions.

12   The Commissioner counters that the ALJ appropriately provided other reasons for
13   discounting Dr. Zadeh's opinion.  First, the Commissioner asserts that the ALJ properly discounted
14   Dr. Zadeh's opinion because her treatment notes failed to provide a basis for the opinion that
15   Claimant was disabled.  A brief form opinion that lacks supporting clinical findings is a legitimate
16   reason to reject a treating physician's conclusion.  *Magallanes*, 881 F.2d at 751.  In this instance, Dr.
17   Zadeh opined that Claimant, at 16 months of age, had a global developmental delay, with a mild-
18   moderate limitation in acquiring and using information.  Dr. Zadeh was unable to assess Claimant's
19   limitations in the areas of attending and completing tasks and interacting and relating with others.
20   Dr. Zadeh identified clinical findings of cleft lip and palate repair, seizure activity, dysmorphic
21   features, global developmental delay and chromosome abnormality.  AR 312-13.

22   Contrary to the Commissioner's assertion, Dr. Zadeh's treatment notes are consistent with
23   her opinion.  Dr. Zadeh identified delays in Claimant's development, including in his motor abilities,
24   communication and growth.  AR 233.  She diagnosed Claimant with a global developmental delay
25   sufficient to require further evaluation by the Behavior and Development Clinic at Stanford.  AR
26   235.  She also documented Claimant's chromosomal deletion, explaining that its clinical
27   significance was not certain, but identifying that if the deletion represented a new genetic change in
28

1   Claimant, then it would be more likely to be associated with his developmental delay and cleft lip.

2   Additionally, Dr. Zadeh acknowledged Claimant's possible seizure activity, which prompted a

3   referral to neurology.  AR 234-35.

4   　　　　The Commissioner further contends that the ALJ reasonably discounted Dr. Zadeh's opinion

5   because it was not based on a consistent treatment history.  AR 19.  An ALJ may properly consider

6   the length of the treatment relationship and the frequency of examination by the treating physician

7   when determining the weight to give a medical opinion.  *See, e.g., Orn v. Astrue*, 495 F.3d 625, 631

8   (9th Cir. 2007).  However, discounting Dr. Zadeh's opinion for this reason is not legitimate given the

9   ALJ's decision to accord great weight to the opinions of two non-examining physicians with no

10  treatment relationship or history with Claimant.  Moreover, Dr. Zadeh examined Claimant on at least

11  two separate occasions, conducting examinations, reviewing Claimant's medical history and

12  evaluating results of genetic testing.  AR 232-36, 261-64.

13  　　　　The Commissioner also argues that the ALJ was entitled to give less weight to Dr. Zadeh's

14  opinion because it was not supported by objective evidence.  Although the ALJ discounted Dr.

15  Zadeh's opinion for this reason, there is no explanation of how Dr. Zadeh's opinion is unsupported.

16  According to the decision, the ALJ found that Dr. Zadeh "did not select a level of limitation for

17  [certain] functional equivalence domains" and did not provide a "clear explanation" supporting her

18  opinion.  AR 19.  In light of these findings, Plaintiff contends that the ALJ was required to recontact

19  Dr. Zadeh for clarification and additional evidence.  The Court agrees.

20  　　　　As a general rule, it is Plaintiff's burden to produce full and complete medical records.

21  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the evidence is ambiguous or

22  "the record is inadequate" to allow for proper evaluation, the ALJ has a duty to develop the record.

23  *Tonapetyan*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The Commissioner argues that the ALJ "properly

24  resolved the conflict presented by Dr. Zadeh's unsupported opinion by discounting the weight he

25  gave the opinion . . . ."  Opposition, p. 10.  However, simply discounting an opinion does not

26  discharge an ALJ's duty to develop the record.  Instead, the ALJ may discharge this duty in one of

27  several ways, including subpoenaing Claimant's doctors, submitting questions to Claimant's

28

1   physicians, continuing the hearing, or keeping the record open after the hearing to allow

2   supplementation of the record.  *Id.*  The ALJ did not do so in this case.

3        Based on the above, the Court finds the ALJ erred in discounting Dr. Zadeh's opinion and

4   remand is appropriate to address these errors.  However, it is not clear from the record that the ALJ

5   will be required to find the Claimant disabled once all the evidence is properly obtained and

6   evaluated.

7        On remand, the ALJ should further develop the medical record regarding Claimant's

8   functional domain limitations, including seeking clarification from Dr. Zadeh regarding Claimant's

9   global developmental delay, Claimant's functional limitations, if any, and Claimant's diagnosed

10  impairments.

11  **B.        Lay Testimony from Claimant's Mother and Aunt**

12        It is uncontested that the ALJ failed to discuss the lay testimony of Claimant's mother and

13  aunt.  Claimant's mother, Ms. Contreras, characterized Claimant as different from other children.

14  She reported that he does not talk, he cannot interact with people, he cannot understand his name, he

15  does not play games, he does not have any interests, he does not understand other people and he cries

16  a lot.  AR 31-44.  In a similar fashion, Claimant's great aunt, Rebecca Castile, testified that he does

17  not understand conversations, he does not interact with her, he does not play games and he does not

18  have any particular interests.  AR 46-47.

19        "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into

20  account, unless he or she expressly determines to disregard such testimony and gives reasons

21  germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also*

22  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir.1993).

23        Here, the Commissioner admits that the ALJ failed to address the lay witness testimony, but

24  contends that the error is harmless because the statements would not have affected the outcome of

25  the ALJ's decision.  *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)

26  (reviewing court cannot consider an error harmless unless it can confidently conclude that no

27  reasonable ALJ, when fully crediting the testimony, could have reached a different disability

28                                                14

determination).  The Court disagrees that the error was harmless.  Crediting the testimony of Ms.

Contreras and Ms. Castile, the Court cannot confidently conclude that "no reasonable ALJ . . . could

have reached a different disability determination." *Id.* at 1056.  The lay witnesses provided

information regarding Claimant's ongoing functional limitations, delayed development and seizures,

which corroborated Dr. Zadeh's opinion and the diagnosis of Claimant's seizure activity.

**C.      Remand**

      The decision to remand to the Commissioner for further proceedings or simply to award

benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir.

2000); *McAllister*, 888 F.2d at 603.  "If additional proceedings can remedy defects in the original

administrative proceedings, a social security case should be remanded.  Where, however, a rehearing

would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.*

(citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th

Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be

served by further administrative proceedings . . . or where the record has been thoroughly

developed.").

      Here, the Court finds that the errors identified above can be remedied with further

proceedings.  On remand, the ALJ should address these errors by further development of the medical

record regarding Claimant's functional limitations, developmental delay and other impairments.

Remand also is appropriate to allow the ALJ to consider properly the lay witness testimony and to

incorporate this consideration in evaluating the medical record and Claimant's functional limitations.

      The decision to remand is not a tacit determination that Claimant should be found disabled.

## CONCLUSION

      Based on the foregoing, the Court finds that the ALJ's decision is not supported by

substantial evidence in the record as a whole and is not based on proper legal standards.

Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the

Commissioner of Social Security AND REMANDS THIS ACTION FOR FURTHER

PROCEEDINGS.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff

1    Becky Contreras on behalf of Claimant, and against Defendant Michael J. Astrue, Commissioner of

2    Social Security.

3           IT IS SO ORDERED.

4           **Dated:**   **August 1, 2011**                    **/s/ Dennis L. Beck**
                                                          UNITED STATES MAGISTRATE JUDGE

16